**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

SEP 2 2 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| HONDA POWER EQUIPMENT MANUFACTURING, INC. | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| TIMOTHY C. WOODHOUSE | ) ) ) |
| and | ) ) |
| STEPHEN R. TICKNER, | ) ) |
| Defendants. | ) |

Civil Case Number 00-2847 (RJL)

**MEMORANDUM OPINION AND ORDER**
(September 22, 2003) (#13,19, 24)

Plaintiff, Honda Power Equipment Manufacturing, Inc.'s ("Honda"), moves for

default judgment against the defendants, Timothy C. Woodhouse ("Woodhouse") and

Stephen R. Tickner ("Tickner").  Honda and the defendants have been engaged in a

prolonged patent dispute, both in the United States and in the United Kingdom, over a

patent for an "Engine Lubrication System."

In its motion for default judgment, Honda asks this Court to declare defendants'





patent invalid, to hold that Honda has not infringed defendants' patent,[1] and to enjoin

defendants from charging patent infringement or instituting an action for infringement

against Honda or its affiliates, subsidiaries, parents, or successors, or distributors,

customers, or users of the GC Series or the GCV Series engines.  Although defendant

Tickner has consented to Honda's default judgment motion, defendant Woodhouse has

not.  As explained below, Woodhouse and Tickner have made little more than a cursory

effort to defend either this motion or the complaint, and have not attempted to contact

their U.S. counsel, despite their counsel's repeated attempts to contact them in order to

determine how to proceed in this case.

The motion for default judgment is further complicated by the defendants'

attorneys' — William Dale and Charles Fuller — motion for permission to withdraw as

counsel.  The Court, therefore, must not only evaluate the merits of plaintiff's motion for

default judgment, but must also decide whether awarding a default judgment to Honda is

appropriate where defendants' counsel seeks to withdraw during the course of the

proceedings.  For the reasons set forth below, the Court grants defendants' counsels'

motion to withdraw and holds that Honda is entitled to default judgment against each

defendant.

---

[1] In *Massa v. Jiffy Products Co., Inc.*, 240 F.2d 702, 704 (9th Cir. 1957), the court acknowledged the granting of default judgment in patent cases and entering default judgment to the effect that the patent is invalid.

## Background

The underlying action stems from a dispute between the parties over U.S. Patent No. 6,000,373 ("'373 patent"), a patent entitled "Engine Lubrication System." Defendant Woodhouse is the inventor of the '373 patent and assigned a part interest in that patent to Tickner. Compl. ¶ 7. The '373 patent application was filed by Woodhouse with the United States Patent and Trademark Office ("USPTO") on July 7, 1998, and the patent was ultimately issued on December 14, 1999. Woodhouse had previously filed a similar patent application to the '373 patent — U.K. Patent No. 2,307,004, or the "'U.K. 004 patent" —in the United Kingdom on November 9, 1995. Pl.'s Mot. Default J. Ex. B.

Plaintiff Honda, filed suit in this Court on November 24, 2000. In its complaint, Honda seeks declaratory judgments that the '373 patent is invalid and that Honda, in manufacturing its GC and GCV Series engines, has not infringed on either the '373 patent or the U.K. '004 patent. *See* Compl. ¶¶ 1, 9. Honda claims that it filed the suit "upon information and belief" that Woodhouse and Tickner had threatened to bring patent infringement claims against Honda regarding the same U.S. and U.K. patents. *See id.* ¶ 11. In fact, Woodhouse and Tickner filed a patent infringement suit against Honda in the U.K. on November 21, 2000. *See* Pl.'s Mot. Default J. at 2.

On March 26, 2001, Honda served the defendants with a copy of the summons and complaint. Shortly thereafter, defendants wrote plaintiff's counsel to acknowledge service and request a twenty-day extension for filing an answer. Pl.'s Mot. for Default J.,

Ex. G.  Almost nine months after Honda filed its complaint in this Court, and six months after seeking an extension of time to answer, defendants Woodhouse and Tickner had neither filed responsive pleadings, nor entered an appearance in this case.  As a result, on August 14, 2001, default was entered by the Clerk of Court against Woodhouse and Tickner.  Subsequently, on November 1, 2001, Honda filed its motion for default judgment.  That, finally, caused Woodhouse and Tickner to respond.

On December 17, 2001, the defendants jointly filed a motion to stay proceedings for 90 days or pending a decision in the U.K. litigation, whichever occurred first, or, in the alternative, to vacate the entry of default.[2]  Honda opposed both motions. Additionally, on January 3, 2002, Woodhouse and Tickner moved for leave to file an answer and counterclaim.  Then, on March 22, 2002, just two months after filing the motion for leave, defendants' attorneys, Mr. Dale and Mr. Fuller, moved to withdraw as counsel for Woodhouse and Tickner.  Dale and Fuller argued that "[t]he failure of Defendants or their representatives to adequately instruct . . . the undersigned inhibits our ability to act on their behalf."  Dale and Fuller Mot. to Withdraw at 3.

Attached to the motion as an exhibit was a detailed declaration of Lawrence E. Laubscher, an attorney admitted to practice in Maryland and Virginia.  In his declaration, Laubscher describes his repeated efforts in vain to contact both the defendants and their

---

[2] In their motion, defendants argued that the Court should vacate the entry of default as they had not retained U.S. counsel when the suit was filed.  *See* Defs.'s Mot. to Stay at 4.

British counsel to seek direction on how to proceed with the litigation.[3]

On January 22, 2002, as Laubscher attempted to contact U.K. counsel for instructions in this case, the Royal Courts of Justice, Chancery Division, Patents Court, rendered its decision holding that Honda's engines did not infringe on the U.K. '004 patent and that the patent, as amended, was invalid. Pl.'s Surreply at 2 & Ex. A at ¶ 69(4), (5). To date, neither Woodhouse nor Tickner has appealed the judgment. In addition, plaintiff represents to the Court in its surreply that the European counterpart to the U.K. '004 patent, European Patent No, 0,859,905 ("European '905 patent"), was also found invalid by the European Patent Office. *See* Pl.'s Surreply at 2. Defendants have not challenged this representation.

As the case now stands, the Court has been informed via a letter from Tickner's current U.K. counsel, the Briffa firm, that Tickner and Honda have entered into a

---

[3] Laubscher explains that he was referred by a Washington, D.C. firm to the British firm of Memery Crystal "to provide opinions regarding the validity" of the '373 patent and possible infringement by Honda of that patent. Laubscher Decl. ¶ 2. In the course of doing so, he arranged for Dale and Fuller to file the motion for leave to file an answer and counterclaim, although Laubscher maintains that he was not asked to represent Woodhouse and Tickner. Laubscher claims that he did so after speaking to another U.K. attorney, Nigel Goodenough of AA Thornton in London, who asked him "whether anything can be done at this stage to save the US patent." Laubscher Decl. Ex. 1. In the months that followed, Laubscher attempted to contact Goodenough several times, but Goodenough never responded, leaving Laubscher without instructions as to how to proceed with the U.S. litigation. Moreover, Laubscher claims that Memery Crystal informed him on March 4 and 5, 2002, that it was no longer representing Woodhouse and Tickner; that Woodhouse and Tickner "cannot agree on how to proceed"; and that Tickner had obtained new counsel in London. Laubscher Decl. ¶¶ 12-13. Two weeks later, Laubscher learned that Tickner's new counsel in the U.K. was engaged in settlement negotiations with Honda. *See id.* ¶ 18. Additionally, he was notified by Memery Crystal in March, 2002, that it would no longer accept his bills, or "debit notes," for work performed on behalf of Woodhouse and Tickner. *See id.* ¶ 17. Throughout his work on behalf of Woodhouse and Tickner, Laubscher never spoke with, nor received instructions from, either defendant. *See id.* ¶ 19.

settlement agreement, part of which requires Tickner to consent to the entry of default judgment against him by this Court. *See* Letter of 9/3/02, at 1. Woodhouse, however, has failed to contact either his U.S. counsel, or Mr. Laubscher, about how to proceed in this case. Dale and Fuller Mot. to Withdraw, Laubscher Decl. ¶ 19. No additional motions or pleadings have been filed by the defendants since the January 3, 2002, motion for leave to file an answer and counterclaim.

Because Woodhouse and Tickner have failed to contact their U.S. counsel, despite Mr. Laubscher's repeated attempts to contact defendants' U.K. counsel and representatives, because neither party has filed any pleadings in this Court for well over one year, and because the Court is convinced that defendants' default is willful, the Court, for the reasons set forth below, grants the motion for default judgment against both Woodhouse and Tickner and grants their U.S. counsel's motion to withdraw.

### Plaintiff's Motion for Default Judgment

When a party fails to file an answer, or otherwise plead or defend, within the time period required by Rule 12 of the Federal Rules of Civil Procedure, the clerk "shall enter the party's default." Fed. R. Civ. Pro. 55(a); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 29 (D.D.C. 2002). After an entry of default is made, the Court may then grant default judgment against the defaulting party. *See* Fed. R. Civ. Pro. 55(b).

The standard in this Circuit for granting a motion for default judgment is set forth

in *Jackson v. Beech*, 636 F.2d 831 (D.C. Cir. 1980), as well as Rule 55 of the Federal Rules of Civil Procedure.  Although the Circuit in *Jackson* noted that default judgment is disfavored as "modern federal procedure favors a trial on the merits over a default judgment," it held that courts may grant default judgment against a "totally unresponsive party" after considering the following factors: 1) whether the delay is willful, 2) whether the plaintiff has been prejudiced by the delay, and 3) whether the alleged defense is meritorious.  *Jackson v. Beech*, 636 F.2d at 836-36; *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987).

After examining the factors set forth in *Jackson*, the Court concludes that both Woodhouse's and Tickner's default is willful.  Unlike in *Jackson*, where the Circuit found that the moving party could not demonstrate willfulness as the delay was attributable to attorney negligence, defendants' delay here is solely a result of their willful failure to respond to their U.S. counsel, or otherwise defend their case.  *See Jackson*, 636 F.2d at 837.  Here, the fact that Woodhouse and Tickner received actual and constructive notice of Honda's complaint, and have nonetheless deliberately failed to answer or assist their counsel in defending their case, demonstrates the willful nature of their default.  *See Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).

Furthermore, defendants have in no way attempted to present any, let alone a vigorous, defense.  *See Schofield*, 197 F.R.D. at 8 (finding that even though plaintiff had been dilatory in her filings, plaintiff's delay was not willful because she had mounted a

vigorous defense since the filing of the default judgment motion). While defendants in early 2002 filed a motion for stay or to vacate the entry of default, and a motion for leave to file an answer and counterclaim, their papers do not address the merits of Honda's claims in a substantive way. Instead, their motions merely state that the defendants' limited resources had prevented them from obtaining U.S. counsel. *See* Defs.'s Mot. for Stay at 2.

Moreover, the Court cannot conclude that defendants' lack of response is due to communication problems or other circumstances beyond their control. *See Jackson*, 636 F.2d at 833; *Biton v. Palestinian Interim Self Gov't Auth.*, 233 F. Supp. 2d 31, 33 (D.D.C. 2002) (explaining that because the defendants were in the middle of the Palestinian-Israeli conflict and had trouble communicating, default judgment should be vacated). Nothing about the U.K. litigation prevented Woodhouse and Tickner from communicating with their U.S. counsel. In fact, the declarations and papers before this Court indicate otherwise. Although defendants maintained that their dilatoriness in filing was due to their lack of U.S. counsel, once counsel was obtained for them by Mr. Laubscher, defendants turned a deaf ear to Laubscher's and their U.S. counsels' attempts to contact them in order to discuss how to proceed in this case. *See* Laubscher Decl. ¶¶ 15-16, 19. The Court therefore concludes that because Woodhouse and Tickner have consistently failed to give attention to this lawsuit,[4] their default is willful.

---

[4] Woodhouse has also ceased prosecuting the claim in the U.K. The Royal Courts of Justice, Chancery Division, Patents Court found that the engines did not infringe of the '004 patent. While Tickner appealed, Woodhouse did not file an appeal. (Honda Power's

The Court also concludes that defendants' delay has prejudiced Honda, thereby satisfying the second factor of the *Jackson* test for granting default judgment. The Court recognizes that delay of satisfaction of a claim is not usually a sufficient basis for finding that the moving party has been prejudiced. *See Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980). However, defendants' continued delay has unnecessarily prolonged this case and has hindered Honda's attempts to resolve the issue of whether its engine systems infringed on defendants' U.S. patent. Honda waited almost nine months after serving defendants with its complaint for a response from the defendants. Its motion for default judgment has been pending nearly two years as defendants' attorneys made efforts, all in vain, to contact defendants. Such excessive prolonging of the case has resulted, the Court believes, in prejudice to Honda. *See, e.g., United States of America v. Funds from Prudential Sec., et al.*, 209 F. Supp.2d 259, 2667 (D.DC. 2002) (citing the increase in the length of litigation due to defendant's failure to file as a basis for a finding of prejudice to the moving party).

Lastly, the Court must consider whether defendants have asserted a meritorious defense. For purposes of resolving a motion for default judgment, a defense is deemed meritorious if it is a complete defense, such as lack of subject matter jurisdiction or a denial. *See Keegel*, 627 F.2d at 374. In their motion for leave to file an answer and counterclaim, defendants deny that the '373 patent is invalid and charge that Honda

---

Supplemental Mem. at 2.)

infringed on the patent. *See* Supp. to Defs.' Mot. to Stay, Ex. A ¶ 16, 18. As the Circuit in *Jackson* found that merely alleging a meritorious defense was sufficient to satisfy the third prong of its test, *see Jackson*, 636 F.2d at 837, and that "likelihood of success" is not a measure of whether defendants have asserted a meritorious offense, *see Keegel*, 627 F.2d at 374, the Court finds that the third prong does not weigh in Honda's favor.

However, despite this assertion of a "meritorious defense," the Court grants plaintiff's motion for default judgment because of the willful nature of plaintiff's default and the prejudice that default has caused Honda. The Court also determines it is appropriate to enter default judgment in this case without taking further proof of Honda's claims that the '373 patent is invalid, and that its engine systems did not infringe on the patent as Tickner has consented to default judgment and Woodhouse has been, in all respects, unresponsive. *See Massa v. Jiffy Prods. Co., Inc.*, 240 F.2d 702, 704 (9th Cir. 1957).

### Motion to Withdraw as Defendants' Counsel

Finally, in addition to resolving the motion for default judgment, the Court must also address whether defendants' U.S. counsel should be permitted to withdraw from the case. U.S. counsel argue, in essence, as they have been unable to contact the defendants for direction on how to proceed, and because they have not been paid, this Court should grant their motion to withdraw as counsel. Defendants have not opposed this motion.

Local Rule 83.6(c) of the Rules of the United States District Court for the District

10

of Columbia provides that when a party is not represented by another attorney, an attorney may withdraw an appearance for a party only by order of the court. The Court should deny defendants' counsel's motion if withdrawal would unduly delay trial, be unfairly prejudicial to any party, or not be in the interests of justice. *See* LCvR 83.6(d);  *Barton v. District of Columbia*, 209 F.R.D. 274, 277 (D.D.C. 2002). However, an attorney should not be in a position where he or she has not been paid, and yet must continue to work for the client at his or her own expense. *See Barton*, 209 F.R.D. at 277.

Procedurally, the case between Honda and the defendants, even though pending for nearly 3 years, is in its infancy. Discovery has not commenced, trial has not been scheduled, and defendants' counsel have not done any preparation that must be assumed by another attorney. Granting the motion to withdraw, therefore, will not create an additional delay in the proceedings. Moreover, the Court does not believe that defendants will be prejudiced by their counsel's withdrawal. Defendants have been notified of Dale's and Fuller's intent to do so and have neglected counsel's multiple attempts to contact them. In addition, Tickner is now represented by counsel in the U.K. and has informed the Court that he consents to Honda's motion for default judgment. While Woodhouse, to the Court's knowledge, will be left without representation, he has demonstrated a complete lack of interest in defending this action. Simply stated, it is not in the interests of justice to order Woodhouse's counsel to continue to represent him when he does not respond to their attempts to contact him and has not paid his bills. In fact, Courts have

11

consistently granted an attorney's motion to withdraw when a defendant has been unresponsive and has not paid his or her attorney. *See, e.g., Joseph Brenner Assocs., Inc. v. Starmaker Entm't, Inc.*, 82 F.3d 55, 57 (2d Cir. 1996) (explaining that the attorney could not effectively represent his client when the client stopped paying him and made it unreasonably difficult to carry out his services); *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 129 (4th Cir. 1992) (allowing attorney to withdraw as counsel when attorney had tried but could not locate the defendants); *Ringgold Corp. v. Worrall*, 820 F.2d 1138, 1140 (9th Cir. 1989) (allowing attorney to withdraw when defendant would not return phone calls and could not be reached).

For these reasons, the Court finds that allowing U.S. counsel Dale and Fuller to withdraw is in the interest of justice and therefore grants their motion.

## Conclusion

For the reasons stated above, the Court hereby

GRANTS the motion for attorneys Dale and Fuller to withdraw as counsel to the defendant;

GRANTS plaintiff's motion for entry of default judgment, and therefore enters declaratory judgment for the plaintiff, declaring that U.S. Patent No. 6,000,373 is invalid and declares that U.S. Patent No. 6,000,373 patent has not been infringed by Honda Power.

SO ORDERED.

RICHARD J. LEON
UNITED STATES DISTRICT JUDGE